The next case on the call of the docket is Agenda No. 6, Case No. 132627, Reynolds v. Reynolds. Is the attorney for the appellant prepared to proceed? Please proceed, Counsel. May it please the Court? Counsel? My name is Jamie Wambacher. I'm here today to argue on behalf of Nancy Reynolds. Section 610.5 is one of the most frequently utilized sections of the Illinois Marriage and Dissolution of Marriage Act. It's relied upon by family law practitioners nearly every day. This Court must affirmatively resolve the deficient of the appellate court's interpretation of 610.5. The canons of statutory construction demand that this Court conclude that a modification of parenting time will only be granted when there is both proof of a substantial change in circumstances and that the modification is necessary for the best interest of the children. As this Court knows, the primary objective of statutory construction is to give effect to the intent of the legislators. To do so, we must first look to the language of the statute itself. If it's clear and unambiguous, the statute must be applied without further aids of statutory construction. The statute is ambiguous if it's capable of being understood by reasonably well-informed persons in two or more different ways. The split between the third district and trappings, and the second district in this case, as well as the split between the majority below and Justice Burkett in his dissent, demonstrate that the statute is not clear and unambiguous. Counsel, in this instance, the father, did he identify what section he was asking for an increase in the parenting time? Did he identify a specific section? In his motion, it just says 610.5. There is no subsection cited originally. His motion was amended the week before trial to eliminate any request to modifications in decision-making. But in the trial court, he argued specifically under 610.C in both oral argument, and he filed two written memorandums. Under each of those, he argued subsection C. And so he took the position that he had demonstrated a substantial change in circumstances, but now the position is that that's not required. That's correct. And he argued substantial change many times in the record below. I think at one point he uses the word, his counsel used the word change circumstances, but multiple times he argued substantial. In the interim, our case was decided by Judge Zalid on November 28th of 2023. And after that, at that time, Trapp Kiss was the only decided opinion on this issue. It was decided in June of 2022. After our decision, but before the appeal was completed in the second district, the second district first came down with its Rule 23 in the salvie, and then the fourth district, which follows the second district, came down with its decision in March of 2025, also a Rule 23 in the case of Eric S. and Hallie S. So in the appellate court, Mr. Reynolds relied heavily on the change in the second district in their Rule 23 in the salvie, which was a deviation from what he had argued in the trial court. And so we've got subsection C, we've got subsection A, subsection E. Which one should we be looking at? And if we try to read all of these together, talk a little bit about, if you would, we've got what is the definition of parenting time and how is all of this supposed to work anyway? I think that this court has to read the statute as a whole. That's what we're directed to do. And if you read the statute as a whole, you have to look to section 600, which is the definition section. And the reason that you can't parse out paragraph A from paragraph C is because the definitions section specifically defines allocation judgment as a judgment allocating parental responsibilities. Okay, but what does parental responsibilities mean? That's not parenting time, though, right? Parental responsibilities is specifically defined in sub 600 D as parenting time and significant decision-making responsibilities. It is both. And so you cannot parse out parenting time as not part of an allocation judgment or a parenting plan. But A says allocating parental decision-making responsibilities, not including parenting time. Correct. But C talks about the modification of a parenting plan or an allocation judgment. And the parenting time in this case was as part of an allocation judgment. So you have to read the definitions. We have a definition for parenting time as well. And that just talks about exercising caretaking functions and non-significant decision-making responsibilities. So wouldn't that be what we should be looking at? It is. The definition of parenting time is only caretaking and non-significant decision-making. But the parenting time is specifically contained also within parental responsibilities. Parental responsibilities mean both. It's not one or the other. The complication with that is. But isn't that meant to signify that the person that is the decision-maker also has, you know, the rights and the responsibilities of the parenting time, too, that that is something that isn't exclusive? I mean, isn't the whole reason for all of this change is to get away from the, you know, terms custody and visitation, and that there's a recognition you're the parental decision-maker, that you are, you know, the child is most likely living in your home, and you are their decision-maker. And so that you are going to have what used to be known as visitation. You have rights for vacations, and you have rights for certain weekends, too. So that's sort of encompassed in that definition. I think that that is part of it. In 2016, rewrite was rewritten entirely to remove words such as custody and visitation and to use the new language, all-encompassing language of parenting time, parental responsibilities, decision-making. That rewrite was written for that purpose. But parenting time is the time both that maybe the person who doesn't have the majority of the, or the significant decision-making also has parenting time. That is exactly what happened here. Nancy Reynolds has the decision-making responsibilities, and Christopher Reynolds has parenting time. And she also has parenting time.  So that would be why that definition would include that. And as I think was mentioned earlier by Justice Rochford in Section A, why it specifically speaks to a modification not including parenting time, which could be for both parents, correct? That there could be... Yes, I agree with that. The difficulty being is if you take parenting time in a practical standpoint, take parenting time out and say, okay, in this case, Mr. Reynolds was asking to increase his parenting time. His weekends at the time of the hearing were Friday to Sunday evening, and then he had Monday night to Tuesday. He was seeking to increase his parenting time to start on Thursday and to continue it all the way through Tuesday, not return the kids on Sunday night. So he was increasing his parenting time. But coupled with that, that would be just the parenting time. That's the time that he is physically with the children. But coupled with that, there were other modifications that have to be made to accommodate what he was asking, which is transportation and other things. Those are contained within the definition of parental responsibilities. If you take parenting time out in a vacuum and you say, okay, we're only talking about the time, but we're not changing anything else, their allocation judgment designated how the children would get to exchanges, where the exchanges would occur. So he was also seeking to change those things. So under the way that the second district pulled out only parenting time, does that mean then that for that hearing, the parenting time only he needed to prove a change in circumstances, but for anything else, the modification of transportation, the drop-off at school or pick-up from school, the earlier time frame, that then that had to be a substantial change because that's not parenting time. Transportation and exchanges and the other things that are accompanied in the body. But don't they go hand-in-hand? Don't they go hand-in-hand if he has them until Sunday night where he drops them off and parenting time? So if he extends his parenting time, the drop-off, wherever that is, also just ends his parenting time. I mean, aren't you getting a little in the weeds with, you know? I don't believe so because of the way that their parenting agreement works. Their parenting agreement had exchanges that occurred at a midpoint location between the two homes. What he was seeking was I want to pick up the children earlier at school, which was not part of the transportation requirement in their agreement, and I want to return them to school. And then she would pick up after school. Those are material changes that change other than just the timing of their agreement. But how would that negatively affect your client, the fact that it's going to be a school as opposed to a midpoint? I assume, and I don't remember, but the school is going to be closer to her home than whatever the midpoint was. It does not negatively impact her at all. But what I'm arguing is that if only parenting time is, as the second district called it, a simple change of circumstances, and everything else is substantial change, where do we draw the line between what is parenting time and what are the other terms in the allocation judgment? And the legislature specifically says to modify the allocation judgment, you need a substantial change in circumstances. So, Ms. Walmbacher, let me ask you this. Subsection A, seemingly on its face, indicates that all you require is change circumstances. And I want to suggest something to you, that the legislature used change in circumstances and substantial change in circumstances interchangeably, and I want you to follow along with me. If you look at subsection C, it says the court shall modify a parenting plan or allocation judgment if the court finds a substantial change has occurred. Now, contrast that to E, which says the court may modify a parenting plan or allocation judgment without a showing of change circumstances. Notably, it does not say without the showing of a substantial change in circumstances, because we know from the immediately prior section that that's what's required. So it seems that the legislature is sort of being a little loose with the language here, that they use these terms change in circumstances, substantial change in circumstances, interchangeably. I agree with you, and the reason that I agree with you is that because paragraph A, I read paragraph A as saying you can exempt parenting time from the two-year requirement if you can show some change circumstances. I read paragraph C to say when you're going to hearing to show those change circumstances, they must be substantial changes. And then paragraph E, I think, encompasses what the second district was basically saying is a simple change, because paragraph E says without a change, but if you look at those things, most of those would be considered a simple change. The parents agreed, or they've been operating under those terms for a period of six months, a few different things. I agree with you that they did not insert substantial in paragraph A, but I think that when you read the statute as a whole, which you're required to do, all of them together lead to the conclusion that it is substantial change. That must be perfect. But when you think about this statutory language that's been in existence for, I don't know, hundreds of years, with different modifications and things, I mean, the legislature is very familiar with the difference between change in circumstances, substantial change. You know, you have to wait two years before you can even come in on certain things. I mean, you talk about reading the statute as a whole, but don't we also have to look at the plain language of the statute? I'm not convinced that the legislature just willy-nilly used substantial change and change of circumstances interchangeably. You also have to look at the fact that the legislature had this court's opinion in the Brewer case from 1998. Under the old statute, arguably it was similar, but very different in some respects. In that case, this court directed that it was substantial change. When the legislature was presumed to know that that's what it was, they didn't change it. In 2016, when they rewrote the IMDMA as a whole and changed the language, they didn't change it at that point either. Unfortunately, I could not find it. So they were aware. They were aware, and they followed this court's language of substantial. In 2617 is when Paragraph A is added, that second sentence that says, at any time, or change circumstances. There is not, in my research, I could not find any statutory legislative history of where that change came from, why that came to be. But after that time, in 2017, when that language was added, the only reported case to interpret specifically that language was TRACIS, which came out in 2022, and the legislature took no action. So we can presume that they knew that the law had been interpreted by the courts, and that they took no action, but they intended it to remain as substantial change as it had been interpreted previously. The additional thing that I want this court to note is that when you're interpreting the statute, you can't insert language into it, but yet that is exactly what the Second District is trying to do. And they state, we hold that pursuant to Section 610.5 of the Act, a party seeking to solely modify parenting time, needs to show, and they insert their own word. They insert the word simple change into that, and not a substantial change in circumstances. Nowhere in any of the definitions is simple changed. In this court, Christopher often inserted the word ordinary before change in history. Also, not in the statute. We cannot add language to the statute that wasn't there. So the Second District is doing that by adding simple change. I also want to talk just briefly about the differences in the lower court's opinions. The Second and the Fourth District are the two districts that are currently following that is just a change and not a substantial change. The Fourth was, as I said before, an unpublished Rule 23, Eric S. and Holly S., which was in March of 2025, which notably is after the trial court in this case rendered its decision. But in that paragraph, in that decision, they explicitly state that Paragraph C governs the modification of parental decision-making or parental responsibilities. Again, ignoring the definition that parental responsibilities includes parenting time. Justice Burkett, in his dissent below, raised this issue specifically regarding what is parental responsibilities when he was questioning about the expedited appeal, and everyone agreed that parental responsibilities does include parenting time. There's also another Fourth District case that is hard to reconcile with the Eric S. case in marriage of Robert L., where in that case, the trial court judge said it was changed circumstances. And on the appeal, the appellate court stated, we have to presume the trial court followed the law and did not apply a nonexistent legal standard. I'm not sure how they then reconciled Eric S. a few years later when they're creating the nonexistent legal standard by saying changed circumstances. The other big difference between the interpretation of the Second District and the actual statute itself is Paragraph A does not contain any provision regarding the burden of proof that's required. Paragraph C is where we see the burden of proof. In the old statute, 610, the burden of proof is clear and convincing evidence. But how – I mean, it's a civil matter, so the presumption is that it's preponderance of the evidence. Why do you need the burden of proof? The legislature chose to put it there, and I think in large part because the old statute included the language of clear and convincing, and it was a change, a drastic change in the practice of family law from clear and convincing to go to preponderance. But the language the Second District uses appears to say it's changed circumstances and that's all you need to prove. And changed circumstances not being substantial, how does that necessitate the modification for the children is where you lose – what is a changed circumstances? Does dad, in this case, buying a bigger house, does that amount to a necessity for the children? It doesn't seem that that makes a lot of sense. But it could, right? I mean, that's why these cases are all very, you know, fact-specific. You know, the changed circumstance that a job change, like I think that happened here, or a shift change or some kind of work plan change that means that he'd have the ability to have the kids longer because he'd be home more. Is that a changed circumstance that's in their best interest? I mean, those are, you know, I think – A large part of the argument in the trial court was those were changed circumstances, but that Mr. Reynolds never proved any how those were in the best interest of the children. Changed circumstances happen all the time, but you have to couple it with the second part, which is it necessitates a modification for the children. And simply having a change does not necessitate a modification for the children. Right. And that's the way it's always been. Correct. Always. And that did not change. That did not change. Right. That has always been there. And I think a large part of the arguments below were best interests weren't even really discussed because we were focusing only on the statutory language. And I remind the court to go back to it was still his burden to prove why those changes, whether simple, ordinary, or substantial, whatever they were, why were those in the best interest of the children, and he did not do so. So, Ms. Weinbacher, your position is that subsection A is all about timing, the gateway, and subsection C is the standard that the court must employ, correct? That is my position. And is it your position also that the statute is ambiguous? I believe it's ambiguous because, as we saw, the second district and third district interpret it differently. I believe it's ambiguous because Justice Burkett and the majority below interpret it differently, and that's what the direction on ambiguous is, is if, in fact, two reasonably well-informed people interpret it differently. But I believe, in conclusion, I believe that you can read it as a whole, as a gatekeeper and the standard of proof when you go to hearing, and it's not ambiguous. But I believe that I am arguing that it's ambiguous in this case just based on the drastic differences and the interpretations across the district, lower courts below. Thank you. Thank you, Ms. Weinbacher. Counsel? Good morning, Mr. Chief Justice, Your Honors, and may it please the Court. This case presents a relatively straightforward question of statutory interpretation, and it calls upon this Court to answer two basic questions. When the legislature amended the language of 610.5 to add into paragraph A that parenting time may be modified at any time upon a showing of changed circumstances, did the legislature intend for those words to carry a different meaning than the existing language in paragraph C, requiring that a court shall modify upon a substantial change in circumstances? We still have to show best interest of child. Absolutely. The A, C, E best interest runs throughout, so our brief largely ignores that question because it doesn't matter which road you choose. Best interest applies to all. The second question that I think this Court really is called to answer is, is the Court going to hold the legislature to the plain language of its own statutory enactments? And so for each of these questions, Mr. Reynolds urges that the answer is yes. To begin with, the longstanding principle of Illinois law, as articulated by my colleague, is that we start with the plain language. We do not start with what we believe the statute is intended to mean and then use that to color how we read the plain language. It is, what does the statute say? Is there a clear meaning? And we follow that meaning. Only when there is a vagary or an ambiguity do we move on to step two. What about this argument that, well, the appellate courts have had some disagreements and had a very lengthy dissent in this case, and that shows ambiguity? I think the problem, and I'll take kind of the two sets differently. So TRAPCAS, I think the issue is they don't really articulate why they thought it was ambiguous or what they thought that the plain language meant. They jump directly into considerations of canons of interpretation, in particular the statutory history where we were pre-2016, post-2016, and post-2017. That's something that you're not allowed to do until you find an ambiguity or a vagueness in the statute. They don't really tell us why they thought that existed or even if they thought it existed. Justice Burkett's dissent, I think, is at least a much stronger argument than the TRAPCAS court, but his analysis focused on, well, I'm a reasonable jurist and I read it differently than my colleagues do, but that also kind of jumps straight into the canons of interpretation and didn't really articulate why there is a vagueness and ambiguity. And I think the issue with both TRAPCAS and Justice Burkett's dissent is none of them address the actual words of paragraph A. I think at one point Justice Burkett says, well, I read paragraph C, and paragraph C means what it means, and that means something different than what my colleagues say paragraph A means. Well, of course they mean something different. They're two different sections of the law that can each apply separately, and also none of the lower courts really consider the distinction of paragraph A tells us that courts may modify, but paragraph C tells us that courts shall modify. It's a distinction that really wasn't ever raised to any of the lower courts any time this statute has been considered, and I think that distinction gives us a way out. It gives us a pathway where we can say you can apply both A and C without them being in conflict because one empowers the court with the inherent discretion to grant it if the court sees fit. But here's the problem I have with that three buckets approach of yours is you say that one is may and one is shall, but as you just acknowledged a moment ago, even if you have a shall statute, it still has to be the best interest of the child, so it isn't necessary to have a shall. It's shall if the best interest is proven because that's still one of the two elements. Under paragraph C, you have to prove a substantial change. You have to prove best interest, and if you prove those two things, the court shall modify. Under paragraph A, if you prove changed circumstances and you prove best interest, now the court may modify but need not modify. We can conceive of circumstances in which a court would say, look, this is a relatively minor change in circumstances. Maybe it's not a minor modification you're seeking that would fall under paragraph E, but for some reason different from best interest, different from the changed circumstances, a court may exercise its discretion from time to time to deny that. I think we would expect that by and large they wouldn't because best interest is below the stone of family law, but paragraph A doesn't say that the court is obligated. It just says that the court can grant it if you prove both prongs, changed circumstances and best interest. And really, there's no way to reconcile this problem in favor of paragraph C because you have these words in paragraph A. They mean what they mean. Ever since this court, in this case, landed on my desk, as I've been briefing it, I've been researching it, and the words that keep popping into my head don't come from any case law. It comes from Dr. Seuss. There's a book, Gordon Reads a Who, and he says, you know, I meant what I said and I said what I meant, and an elephant is honest 100 percent. That really is our rule of statutory interpretation. We have to assume that the legislature meant what they said and said what they meant. So let me ask you this. I suggested to Ms. Wambacher that the legislature uses the words change of circumstances and substantial change of circumstances interchangeably, and I pointed out that in subsection E, I'm sorry, C and E were both referred to the parenting plan or allocation judgment. C refers to a substantial change of circumstances, and E refers to a mere change of circumstances. And so our position is those are not intended to be used interchangeably. What happened in 2016 is the legislature left a gap in your spectrum of change circumstances that was filled by the modification in 2017. If you had no change in circumstances, you're in paragraph E. If you had a substantial change, you were in paragraph C, and it left this question of, okay, but what if you're in the middle? And that's what the second sentence of paragraph A that was added a year later does, is it fills in the hole left between paragraphs E and C by saying if you have a nonsubstantial change that is still a change, you get more than just paragraph E relief. You get to go with a straight best interest modification approach. You've got a shot. You've at least got a shot. And, you know, I don't know what the second sentence of paragraph A means other than that, because the best argument against my client's position is this two-year timeliness. You know, it's just intended to affect this two-year rule that exists. My problem with that approach is you read paragraph A as it read before and after the 2017 amendment. Before it said you cannot file within two years to modify parental responsibilities. That is clearly defined by law to mean both parenting time and decision making. I do disagree with my colleague that argued below with the second district on this issue. I think the 600s, the definitions, parenting plans, allocation judgments, parental responsibilities, all encompass parenting time. Anybody who practiced family law knows that those encompass parenting time. So that was what the statute read in 2016. And then in 2017, they modify it not to say parental responsibilities, but to say parental decision-making responsibilities, not including parenting time. The legislature could have stopped right there. If all they modified in paragraph A was you cannot file in two years for decision-making, not including parenting time, every person in this room would understand what paragraph A meant, what that modification and amendment to the law meant. It would carve out an exception. But they didn't stop with those five or six words at the beginning of paragraph A. They added on this whole extra sentence. And even that sentence could have been shorter if the legislature only intended to amend the time requirement because it reads that parenting time may be modified at any time without a showing of serious endangerment. And then it goes on. The legislature could have put a period right there. Parenting time may be modified at any time without a showing of serious endangerment. And, again, we all would have understood clearly what they were saying, that parenting time to be filed within two years does not require serious endangerment. You can seek it at any time. But, again, it didn't end with a period. They stuck a comma there and kept telling us upon a showing of changed circumstances. The only way in which this court can reconcile the language in favor of paragraph C is if it just takes a red marker to that second clause of the second sentence of paragraph A and just pretends it's not there because there is no reading favorable to paragraph C that allows those words to continue having any meaning. But this is also part of where we stress this three buckets approach. I don't think this court has to choose between A and C. I don't think this court has to say that C applies generally to all aspects of an allocation judgment and A applies to parenting time only because there is this distinction of language that allows the court to say this is a uniform body of law from no change to substantial change. And as you move through that spectrum, your entitlement to relief changes along the way. To respond to some other questions that were raised earlier. Did you raise the three buckets approach below the above clause? No. And I don't think we are required to. I spend at least some portion of the brief explaining why I think that can be raised for the first time in this court because it doesn't affect the procedure of the trial that happened. It's not like we're trying to add elements or remove elements. There's nothing about the trial that would have been conducted differently. So there's no prejudice. There's no surprise. There's no unfairness by allowing the court to take up this interpretation here because it's asking the court to answer the same question on the same statute based upon the same evidence simply looking at a different interpretation. Because it's de novo review, there's a deference to the lower court that can be done at this stage. So responsive at one point to I think Justice White's question, you had asked my colleague, what do we do with the fact that the trial attorneys didn't argue paragraph A? And I'd say that's 90% true that they didn't. There was one point, and I want to hold it. It's page 510 of the record. The trial attorney states, you know, the standard under current. To be fair, my question was about the fact that there was no allegation in the pleading of a specific paragraph. Okay. I didn't say anything about trial. Okay, yes. So there was at least one point where he cites to paragraph A of the statute in his argument. I would concede that he cited to paragraph C far more often than he cited paragraph A. And he also argued that he did show substantial change in circumstances, right? He did. And then at other times, at one time in particular, he argued that he showed a change of circumstances and quoted to the court the language in paragraph A. So it was at least clear that he put before the court the issue of whether paragraph A is applicable. I think we also have to, you know, concede that the trial court sitting at that moment in time had binding precedent. It was obligated to follow TRAPCAS. It was obligated to follow a substantial change standard. And the attorneys were obligated to litigate a substantial change standard because nobody could ask the trial court to do something different because the only other precedent that was favorable to paragraph A was all unpublished. The appellate courts were creating district splits with unpublished authority and essentially binding the trial court's hands by sort of forcing it to make a decision that it knew wouldn't hold water once it went up to the second district because the second district had already weighed in on this issue and ruled that it's changed, not substantial change, but the court was prohibited by our standards of stare decisis and precedent from relying upon that decision. So the attorneys were arguing the standard that the court had available to it. So I also don't think for that reason that there should really be weight placed on which paragraph is emphasized to the trial court. Mr. Brandner, there is an important value in family law cases, which is stability. And, of course, we look at the statute, but we also look at the consequences of our interpretation. And I would suggest to you that there are change in circumstances in every family. Families are dynamic, they're organic. And an approach which merely requires a change of circumstances might promote increased litigation and upset the value of stability in these cases. What's your response to that? So I think that's where the emphasis on the court's discretion under paragraph A comes in because those are the circumstances. If a parent comes in and says, well, I want this change because I get off of work 15 minutes earlier, 5 minutes earlier, 10 minutes earlier, the court could start saying, look, even if I thought it was in the best interest of the child to grant this modification, what's not in the best interest of the child is for me to keep letting you come back here every six months asking for minor changes to the schedule. I'm not going to do it anymore. And it really doesn't solve the fact that under paragraph E, parents were entitled to do this anyways. You could always come in and ask for minor modifications without a showing of changed circumstances at all. You still had to prove best interest, and yet the courts have not been inundated with thousands of pleadings asking for minor changes. So I don't know that it's a realistic risk. I think it does open the door a little bit, but the court's discretion to say I'm still not doing it is a backstop to that concern. I think the interests in consistency are also just straight best interest standards. The court is looking to who's provided caretaking functions over the past two years, the child's adjustment to their home, their school, their community. All of those things encompass the idea of permanency and stability baked into the question of best interest. So is there a risk that a couple extra pleadings get filed that seek this, and the court says, well, for stability reasons, I'm not going to do it. You all wasted six months of litigation. Maybe, but I don't think it's a strong enough concern that as a matter of policy we would rule contrary to the statutory text. I think there's also, I don't remember if it's paragraph F or paragraph G, but it's stuck all the way at the bottom of 610.5. The court also has the power to enjoin future litigation if the court finds that people are unnecessarily and vexatiously filing motions to modify over and over and over. The court has the inherent authority under the statute to say I'm imposing a time limit. You cannot file within this time frame. No questions asked. That's it. So if somebody keeps doing it, the court can say that's it, you're on time out for two years. You don't get to file any more of these for two years. You've run out of my patience. So I don't, I think those should address those concerns. The only other comment from my colleague that I respond to is she focuses at a time on the fact that the second district uses the word simple, simple change. And we in our brief use the word ordinary change. And I suspect this is evident, but those are intended to be words not of definition, but words of distinction. The word ordinary change isn't meant to define it any differently than change. It is simply meant to distinguish it from a substantial change. You could insert the word nonsubstantial there. You get the same meaning. But really you're talking about change and substantial change. Whether we use ordinary change, whether we use simple change, whether the appellate courts used ordinary or simple change, I don't think weakens this argument. Because they weren't intending to add words into the statute. They were just intending to distinguish the fact that using change and substantial change can get a little bit linguistically confusing at times. So we need to clearly identify or articulate what our two available standards are. And then lastly, I think there was some question about, from Justice Taylor, about the burden of proof. What do we do with the fact that the original statute had this clear and convincing standard and the paragraph C had a preponderant standard and paragraph A doesn't? What do we do about that? I think the language in paragraph C is simply belt and suspenders. It's making it abundantly clear to anybody reading it, this is not clear and convincing anymore. This will now be like every other civil case that we have. And now that we've made that clear, when we amend the statute a year later, we don't need to keep reiterating the preponderance of evidence standard because it carries in all civil cases. So for these reasons, we would urge the court to affirm the judgment and the reasoning of the second district to hold that paragraph A permits a modification upon changed circumstances. And therefore, affirm the second district's reversal of the trial court's judgment. Thank you. Thank you, Mr. Bredner. Ms. Lombacher. I have just two areas of argument that I wanted to address. First, I appreciate Justice Taylor's question about the consistency and stability because as I was making notes for response, I wanted to, I broke down consistency and stability of the children because the purpose of the statute is to discourage continuous litigation involving children and to prevent children from ping-ponging. Creating a standard that says only a change in circumstances creates more litigation and potentially results in the ping-ponging of children from. Now, dad moved into a new house, so therefore, we're going to change this. Now, this is going to have, dad got a different work hour, so now we're going to change this. That is not the consistency and stability that the legislature and the long-standing case law talks about that is necessary for the children. So I think the interpretation to make it broad and say a change in parenting time but change that from decision-making, I would argue that parenting time is more ping-ponging and resulting in instability for the children than the decision-making. Often, the children would have no idea what decisions their parents are making, but they definitely will know the impact or feel the impact of a change in their parenting time schedule. It can be, but isn't that where the best interest standard comes into play? It is, but it's not just we don't only consider the best interest. We have to consider what are those circumstances and are we going to let cases proceed to hearing on minor or not, well, minor is an E, but on changed circumstances. And what is changed circumstances compared to substantial change? I think that's obviously to the court's discretion to say one or the other. The last thing that I wanted to address is this three buckets, may versus shall. Mr. Brandner's use of may is misplaced. The may in paragraph A talks about the modification of when it may happen, not the modification of the parenting time. Parenting time may be modified at any time. The may comes to the any time and excludes it from the two-year requirement on decision-making versus in paragraph C where the shall comes after the or in the direction of the modification. I think the may and the shall, it's misleading. While it's an interesting play on words, I don't believe that the may is actually giving the court the discretion that he argues in his brief and briefly in his argument that it did. The language is clear that the shall comes to the modification of the parenting plan or the allocation judgment. In this case, the allocation judgment contained the parenting time. Therefore, we are arguing that the parenting time could only be modified by paragraph 6 because it was contained within the allocation judgment. For those reasons, we would ask the court to reverse the second district and affirm the trial court's decision. Thank you, counsel. Case number 132627, Reynolds versus Reynolds, is taken under advisement as agenda number 6. Ms. Wambacher and Mr. Brandner, the court thanks you for your arguments.